UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARLON A. PENTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-888-ACL |
| | ) | |
| BRYAN BOESING, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Marlon A. Penton brought this action under 42 U.S.C. § 1983, alleging the violation of his constitutional rights during his incarceration at Farmington Correctional Center ("FCC"). Defendant Bryan Boesing is the Deputy Warden at FCC. Penton is presently confined at Northeast Correctional Center ("NECC") in Bowling Green, Missouri.

Penton has filed 27 motions that are currently pending before the Court. Additionally, Defendant has filed a Motion for Summary Judgment.

## I. Background

In his Complaint, Penton states that he was placed in administrative segregation when he arrived at FCC on August 6, 2024, for a decades-old escape attempt. He alleges that the ventilation system in the administrative segregation unit was not functioning properly, and he was exposed to unsanitary conditions, including mice droppings and bugs. Penton alleges that he developed a right lung infection as a result of being housed in administrative segregation for over three months. He was transferred to a different institution on November 19, 2024, and was confined at Eastern Reception, Diagnostic and Correctional Center

("ERDCC") at the time he filed his Complaint. Penton contends that Defendant Boesing knew of the conditions and issues with the ventilation system and disregarded the risk to Penton's safety by placing him in the unit. Penton indicated he was suing Boesing in his individual and official capacities.

On September 5, 2025, the Court[1] found that Penton's official capacity claims were subject to dismissal for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A, but issued process on his claim for deliberate indifference to a substantial risk of harm in violation of the Eighth Amendment against Boesing in his individual capacity.

In a Memorandum and Order dated February 13, 2026, the undersigned denied the following motions filed by Penton: two motions for a preliminary injunction, a motion to appoint counsel, a motion requesting a mold assessment, a motion for extension of time to file an amended complaint, a motion to appoint an expert witness, and a motion for an emergency hearing. (Doc. 45.)

## II. Discussion

As previously noted, Penton has filed 27 motions that are presently pending before the Court. The undersigned will discuss these motions in turn.

Penton's first pending motion requests that Defendant provide any documents, including medical records, supporting Penton's Complaint. (Doc. 47.) This appears to be a request for production of documents directed at Defendant. As such, the motion will be stricken from the record.

[1]Senior United States District Judge Stephen N. Limbaugh, Jr.

**A. Motions to Strike**

Penton has filed four motions to "strike" his own motions. (Docs. 59, 66, 70, 73.) Specifically, he requests that the Court strike his motions for sanctions (Doc. 54, 58), motions for injunctive relief (Doc. 48, 49), motion for legal work (Doc. 50), motion to take judicial notice (Doc. 57), motion to appoint counsel (Doc. 52), and motion to amend (Doc. 46).

The undersigned construes these motions as motions to withdraw. Penton's motions will be granted.

**B. Motions to Compel**

Penton has filed two separate motions to compel (Docs. 63, 80).

Federal Rule of Civil Procedure 37(a) permits parties to move for an order compelling discovery. The Rule requires that any motion requesting such relief "include[s] a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). It also lays out four circumstances where a motion compelling discovery may be sought: first, where a deponent fails to answer a question asked under Rule 30 or 31; second, where a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4); third, where a party fails to answer an interrogatory under Rule 33; or fourth, where "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

Penton filed his first Motion to Compel on May 26, 2026. (Doc. 63.) He requests that the Court issue an order compelling Defendant to provide documents related to Penton's

First Request for Production of Documents. Penton indicates that he requests documents relevant to his requests number 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24. Penton states that he spoke with counsel for Defendant on April 7, 2026, in an effort to resolve this dispute; and wrote counsel golden [rule] letters on April 1, 2026, and again on April 20, 2026. Defendant has not filed a response to Penton's Motion to Compel.

On July 23, 2026, Penton filed his Second Motion to Compel. (Doc. 80.) He states that Defendant continues to fail to produce documents relevant to his request. Penton further argues that Defendant has failed to answer written deposition questions under Federal Rule of Civil Procedure 30(a). Federal Rule of Civil Procedure 31 authorizes the deposition of any person, including a non-party, upon written questions. Fed. R. Civ. P. (a)(1).

Defendant did not respond to Penton's Second Motion to Compel.

The Court will direct Defendant to file responses to Penton's pending motions to compel, so that these issues can be resolved.

**C. Motions for Sanctions**

Penton has filed four separate motions for sanctions against Defendant. (Docs. 53, 60, 72, 82.) Additionally, he has filed a "Motion to Place Court on Notice" regarding his medical records being given to non-parties in violation of his HIPAA rights. (Doc. 56.) Defendant's alleged violation of Penton's HIPAA rights is also one of the subjects of his motions for sanctions.

***Motions Regarding Medical Records* (Docs. 56, 72)**

Penton states that, on April 13, 2026, he was taken from his cell at Crossroads Correctional Center ("CRCC") by "Two House Secretary" Ashley Herring and taken to Ms.

Herring's office. He states that Ms. Herring informed him that she had his medical records and that he could view the records but could not remove them from her office. Penton indicates that Ms. Herring reported that "Ms. Botts" received the records from the Attorney General's office and gave them to Ms. Herring. Penton argues that he never authorized "these non-party members to look at or have my medical records." (Doc. 56 at 2.)

Additionally, on June 25, 2025, Penton filed a Motion for Sanctions against Defendant based on Ms. Botts' and Ms. Herring's access to Penton's medical records. (Doc. 72.)

Assuming for the sake of argument that Defendant's conduct ran afoul of HIPAA, HIPAA did not create a private right of action for violations of the Act. *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citing *Adams v. Eureka Fire Prot. Dist*., 352 Fed. Appx. 137, 139 (8th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006)); *see also Fogle v. Missouri Dept. of Mental Health*, 2008 WL 5234757, *2 (E.D. Mo. Dec. 15, 2008) ("Every court that has considered the issue has held that HIPAA does not create a private cause of action for violations of the act.").

Even if Penton is simply asserting a "right to privacy" under 42 U.S.C. § 1983, Courts have generally held that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them. *See, e.g., Beers v. Stockton*, 2000 W.L. 1839535, *1 (8th Cir. 2000) (Medical information released to nurse at another jail where Beers had been transferred after he made representations regarding what medications he was taking. Jury could not conclude that "the release was made in bad faith or for reasons unrelated to the continuity of Beer's medical care and to prison security. Likewise, Stockton's release of medical information to [facility]

non-medical personnel was related to penological concerns"); *see also Tokar v. Armontrout*, 97 F.3d 1078 (8th Cir. 1996) (wherein the court addressed Tokar's argument that his constitutional right to privacy had been violated by his segregation in HIV-only unit but the Eighth Circuit disagreed with his assertions).

Penton's allegations reveal that non-party prison employees had contact with his medical records only to facilitate his viewing of the records for the purpose of this litigation. Penton's request for sanctions against Defendant on these grounds is denied.

***First Motion for Sanctions* (Doc. 53)**

On March 6, 2026, Penton filed a "Request for Sanctions Under Fed. R. Civ. P. 11(b)." (Doc. 53.) Penton states that he received Defendant's January 15, 2026 Response to Plaintiff's motion for preliminary injunction on February 23, 2026. (Doc. 42.) The mail was postmarked February 18, He notes that the undersigned denied this motion on February 13, 2026. (Doc. 45.) Penton states that he was not able to file a Reply, due to his untimely receipt of Defendant's response. He argues that Defendant's certificate of service stating the Response was mailed on January 15, 2026 was filed in violation of Rule 11(b), and was a dilatory tactic to prevent Penton from receiving the Response prior to the Court's ruling.

Although Defendant did not file a Response to this Motion, he addresses the delay in Penton's receipt of Document 42 in his Response to Plaintiff's Motion to Modify Case Management Order. (Doc. 64 at 2.) Defendant states that the exchange of information between the parties has been slowed by mail-related delays. He further states that, at the outset of discovery in this case, counsel for Defendant inadvertently served his responses to Penton's discovery requests to Penton's previous address. Counsel states that he did not become aware of this mistake until mail was returned to his office approximately a month

later, which resulted in a several-week delay of Penton receiving these responses and documents.

The undersigned finds that Penton's delayed receipt of Defendant's January 15, 2026 Response to Penton's motion for preliminary injunction (Doc. 42) was due to excusable neglect rather than an intent to mislead the Court or delay the proceedings. Thus, Penton's Motion for Sanctions on this basis will be denied.

***Second Motion for Sanctions* (Doc. 60)**

On May 5, 2026, Penton filed a "Motion for Sanctions Number 3." (Doc. 60.) Penton requests that the Court sanction Defendant and his counsel "pursuant to its inherent powers and consistent with Fed. R. Civ. P. 11(c)," and strike the Affidavit of Defendant Bryan Boesing. *Id.* at 1. Penton first alleges that Defendant made false representations in his Response to Penton's preliminary injunction. (Doc. 42.) Specifically, he notes that Defendant states that Penton "has been housed in CRCC's medical unit since his arrival there." *Id.* at 5. Penton states that this is untrue, as Penton was placed in CRCC "two house adseg" upon his arrival on December 9, 2025, and was not housed in the medical unit until December 16, 2025. Penton argues that Defendant's counsel knowingly made this false statement to the Court.

Penton next takes issue with Defendant's answers and objections to Plaintiff's First Set of Interrogatories. For example, he argues that Defendant's answer to Interrogatory No. 4 stating that he did not decide Penton's housing assignment but merely approved the finding of the classification committee is untrue. He further takes issue with Defendant's statement that Penton had multiple conduct violations in the year prior to his transfer to FCC, noting

that he only had one conduct violation during this period. Finally, Penton argues that the Affidavit of Bryan Boesing submitted by counsel for Defendant contains statements that counsel knows are false.

Defendant filed a Response in Opposition to Plaintiff's Third Motion for Sanctions on May 18, 2026. (Doc. 61.) Defendant first argues that his statement that Penton had been housed in the medical unit of CRCC since December 9, 2025, was based on Penton's statement in a motion filed on January 6, 2026, that he was housed in the medical unit at CRCC at that time. Defendant states that if that was in fact incorrect, it was based on a plausible interpretation of Penton's statement and not any intent to deceive the Court. Defendant further argues that this statement was not relevant to resolving Penton's Motions. Defendant next argues that Penton's request for sanctions based on Defendant's interrogatory responses should be denied because the statements are truthful. He further argues that Penton will have the opportunity to refute the statements in response to a dispositive motion or at trial.

The Court finds that Defendant's misstatement regarding the day on which Penton entered the medical unit at CRCC is not a basis to issue sanctions against Defendant. It was reasonable for Defendant to assume Penton had been housed in the medical unit since his arrival at CRCC on December 9, 2025. Further, the one-week difference had no bearing on the Court's denial of Penton's Motions. Penton has also failed to show that Defendant intentionally made any false statements in his answers to Penton's interrogatories or in his Affidavit. His disagreement with Defendant's answers does not warrant sanctions.

Thus, Penton's Motion for Sanctions will be denied.

***Third Motion for Sanctions* (Doc. 82)**

Penton filed his final Motion for Sanctions on July 24, 2026. He requests that the Court impose sanctions on Defendant's counsel for exhibiting "an ongoing pattern and practice of abusing the judicial process, engaging in unscrupulous tactics to harass, caus[ing] unnecessary delay, and needlessly increase[ing] the cost of litigation." (Doc. 82 at 3.) Penton cites the following actions allegedly taken by counsel for Defendant: (1) filing false certificates of service; and (2) violating the Court's discovery orders.

Defendant has filed a Response in opposition to Penton's Motion for Sanctions. (Doc. 89.)

**1. Certificate of Service**

Penton first argues that counsel for Defendant falsified the certificates of service on Defendant's Motion for Leave to File Motion for Summary Judgment Out of Time (Doc. 75) and Motion for Summary Judgment (Doc. 76). He notes that the certificates of service state that the documents were mailed to Penton on July 7, 2026, but Penton did not receive them until July 17, 2026. Penton argues that "it doesn't take a full week to receive documents that's only 60 miles away in the same state." (Doc. 82 at 4.)

Defendant responds that Penton's argument is frivolous. Defendant notes that Penton's own evidence attached to his Motion reveals that Penton received the mail in question on ***July 16***, 2026. (Doc. 82 at 10.)

Penton's argument lacks merit. The fact that it took nine days for Penton to receive mail from the United States Postal Service is entirely reasonable and does not support his claim that counsel for Defendant falsified certificates of service.

**2. Violation of Court Orders**

Penton next argues that Defendant violated this Court's scheduling order (Doc. 68) when he filed his Motion for Summary Judgment on July 7, 2026, rather than the July 6, 2026 deadline set forth in the Court's Order.

Defendant responds that he filed a Motion for Leave to File his Motion for Summary Judgment Out of Time, in which he explained that he experienced technical failures that caused him to complete the filing of his motion after midnight had passed and the deadline had expired. (Doc. 75.)

The Court granted Defendant's Motion for Leave to File Out of Time, thereby permitting Defendant to file his Motion for Summary Judgment on July 7, 2026. (Doc. 79.) Thus, Penton is not entitled to sanctions on this basis.

**D. Motion to Amend Complaint (Doc. 74)**

The Case Management Order ("CMO") issued on November 20, 2025 provided that all motions for joinder of additional parties or amendment of pleadings must be filed not later than December 22, 2025. (Doc. 25.) The deadline for completion of all discovery in this case was May 22, 2026. *Id.*

On June 29, 2026, Penton filed a Motion to File First Amended Complaint to add four new defendants. (Doc. 74.) He attached the proposed First Amended Complaint, with the additions underlined. (Doc. 74-2.)

It is well-established that a "motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause." *Kmak v. American Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. Oct. 19, 2017) (quoting *Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 977 (8th Cir. 2013)). "The primary measure of good

cause is the movant's diligence." *Id.* (quoting *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014)). Courts generally do not consider prejudice to the nonmoving party if the party seeking leave to amend "has not been diligent in meeting the [case management] order's deadlines." *Id.* (citing *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012)).

A court may also deny leave to amend when there is a showing of one of the following "compelling reasons:" "undue delay, bad faith[ ] or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Williams*, 719 F.3d at 977. Furthermore, it is not an abuse of discretion to deny a motion to amend the pleadings where the nonmoving party has moved for summary judgment. *See Davis v. City of St. John*, 182 Fed. App'x. 626, 627 (8th Cir. 2006) (unpublished per curiam) (affirming denial of leave to amend where plaintiffs sought to amend their complaint eight months after the Case Management Order's deadline for amendment of pleadings).

Here, Penton states that the new defendants and information he seeks to add were not known to him when he first filed his Complaint. He further states that he does not anticipate Defendant will be prejudiced by the amendment of his Complaint.

**1. Good Cause**

Penton has failed to demonstrate good cause for his untimely request to amend his Complaint. His motion was filed six months after the expiration of the deadline to join parties or amend pleadings, and a month after the deadline for the completion of discovery. Additionally, Penton filed his Motion only one week prior to the deadline for the filing of

dispositive motions. Both Penton and Defendant have filed motions for summary judgment, which are presently pending before the Court.

**2. Futility**

The proposed claims against the new defendants would also be futile. Penton seeks to add the following new defendants: (1) Terri Vandergriff, Warden of FCC, in her individual and official capacities; (2) Missouri Department of Corrections ("MODOC"); (3) John Doe, a maintenance supervisor for FCC, in his official and individual capacity for damages; and (4) Trevor Foley, Director of the MDOC, in his individual and official capacities. Penton alleges that each defendant "is responsible for failing at their duties and each defendant ***is guilty of negligence*** because it was each of their responsibilities to provide plaintiff with safe and healthy living conditions." (Doc. 74-2 at 7.) He further states that all defendants "***were negligent*** because they had a duty to protect all inmates at FCC, including petitioner, from the foreseeable deprivation of their constitutionally protected rights under the Eighth and Fourteenth Amendments." *Id.* at 8 (emphasis added).

***Official Capacity Claims***

As noted in Judge Limbaugh's September 5, 2025 Memorandum and Order, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983").

Thus, Penton's official capacity claims and claims against MODOC fail to state a claim.

***Individual Capacity Claims***

The Court's September 5, 2025 Memorandum and Order provided that, under the subjective component of a deliberate indifference claim, "a plaintiff must demonstrate that the prison official was deliberately indifferent, which "in this context means [an] actual intent that the inmate be harmed, or knowledge that harm will result, or reckless disregard of a known excessive risk to inmate health and safety." *Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir. 1997). "Deliberate indifference under the Eighth Amendment is the equivalent of criminal recklessness: the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hodges v. Department of Corrections*, 61 F.4 th 588, 592 (8th Cir. 2023). *See also Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021) (explaining that deliberate indifference "means that prison officials subjectively knew of and disregarded the inmate's safety risk"). Consequently, Penton must show "more than negligence, more even than gross negligence" to evince deliberate indifference. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014.)

Here, the proposed First Amended Complaint alleges that the new defendants acted negligently in failing to protect Penton from unsafe living conditions. Penton's allegations are insufficient to state a deliberate indifference claim. Thus, Penton's individual capacity claims against Terri Vandergriff, John Doe, and Trevor Foley fail, and the amendment of his Complaint would be futile.

Accordingly, Plaintiff's Motion to File First Amended Complaint (Doc. 74) will be denied.

**E. Motion to Appoint Counsel (Doc. 71)**

Penton also requests that the Court appoint him counsel. This is his fifth such request. The Court denied the other requests, finding that, although Penton has presented non-frivolous claims in this case, this action "appears to involve straightforward questions of fact rather than complex questions of law, and there is no indication that Plaintiff cannot investigate the facts and present his claims to the Court." (Doc. 24 at 2; Doc. 45 at 6.) As the Court previously explained, "[t]here is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). Instead, where the moving party has pleaded a nonfrivolous cause of action, whether to appoint counsel falls within the discretion of the trial court. *See id.* In considering whether to appoint counsel, courts consider "the factual and legal complexity of the underlying issues, the existence of conflicting testimony, and the ability of the indigent plaintiff to investigate the facts and present his claims." *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013).

Penton has continued to clearly articulate his claims and arguments, has successfully filed numerous motions, and this case does not involve factually or legally complex issues. Thus, Penton's Motion will be denied.

**F. Motions for Extension of Time (Docs. 62, 81)**

On May 26, 2026, Penton filed a Motion to extend the deadline for the completion of discovery and the deadline for the filing of dispositive motions to December 20, 2026. (Doc. 62.) In support, Penton explains that he has not received discovery from Defendant, which is necessary to complete his dispositive motion.

Defendant filed a Response in Partial Support of Plaintiff's Motion, stating that Defendant does not oppose extending the discovery deadline as long as the dispositive motion deadline is extended proportionally. (Doc. 64.) Defendant further states that he opposes extending the discovery period to December, but consents to an extension of the discovery deadline to August 22, 2026, and an extension of the dispositive motion deadline to September 22, 2026.

On July 23, 2026, Penton filed a Motion to extend the discovery deadline to October 2026, in Reply to Defendant's Response. Penton again cites Defendant's failure to produce requested discovery.

As previously discussed, Penton has filed Motions to Compel that have not been fully addressed by Defendant. Defendant will be directed to file a Response to these motions. As a result, it will be necessary to extend the discovery deadline until after these motions are resolved. Additionally, the pending motions for summary judgment will be held in abeyance until the motions to compel are resolved. The Court will set forth a schedule for the parties to submit additional briefing on the pending motions for summary judgment after the motions to compel are resolved.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motions to Strike (Docs. 59, 66, 70, 73) are **granted** in that Plaintiff's Documents 46, 48, 49, 50, 52, 54, 57, and 58 are **withdrawn**.

**IT IS FURTHER ORDERED** that Plaintiff's discovery request (Doc. 47) is **stricken.**

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Sanctions (Docs. 53, 56, 60, 72, 82) are **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to file a Reply to his Motion for Sanctions (Doc. 100) is **found moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (Doc. 74) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. 71) is **denied**.

**IT IS FURTHER ORDERED** that Defendant file a Response to Plaintiff's Motions to Compel (Docs. 63, 80) no later than **September 29, 2026**. Plaintiff should file any Reply no later than **October 20, 2026**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Extensions of the deadlines for the completion of discovery and the filing of dispositive motions (Docs. 62, 81) are **granted in part** in that the deadline for completion of discovery is **stayed** and the pending motions for summary judgment (Docs. 76, 87) are **held in abeyance** pending resolution of Plaintiff's Motions to Compel.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of September, 2026.